# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br> vs.<br><br>MELVIN M. DORTCH,<br><br>    Defendant. | 8:15CR265<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Findings and Recommendation (Filing No. 25), issued by Magistrate Judge F.A. Gossett recommending that the Motion to Suppress filed by the Defendant Melvin M. Dortch ("Defendant") (Filing No. 18), be denied. Defendant filed Objections to the Findings and Recommendation (Filing No. 29) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a). The Government responded (Filing No. 32) to the Objections. For the reasons set forth below, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

## BACKGROUND

Defendant is charged with one count of being a felon in possession of a firearm. (Indictment, Filing No. 1.) Defendant moves to suppress any evidence seized and any statements Defendant made to law enforcement on or about June 4, 2015.

On Thursday, June 4, 2015, at approximately 7:35 p.m., Defendant was standing in the street in the area of 29th Street & Parker Street in Omaha, talking to his girlfriend, who was seated in a stopped minivan. (Tr. at 7-8.) Another car, a Pontiac, had pulled up alongside the minivan to talk. (Tr. at 8; Government's Exhibit ("G.E.") 2.)

Two gang-unit police officers, including Officer Mike Sundermeier ("Officer Sundermeier"), and a United States Marshal were patrolling the area of 29th Street and Parker Street in an unmarked car. (Tr. at 7-8.) Officer Sundermeier testified that there had been three firearms recovered during traffic stops in front of a nearby apartment building over the past couple of weeks and that the gang unit had been briefed that some South Family Bloods had moved into the building, creating some tension with the Hilltop Crips. (Tr. at 12-13.) Officer Sundermeier had not heard of Defendant and knew nothing about him before June 4, 2015. (Tr. at 31-32.)

The officers' vehicle came upon two other cars parked facing north on 29th Street in front of the apartment building. (Tr. 9-11; Ex. 2.) One was a van with one occupant. Officers observed that the van was stopped in the wrong lane away from the curb. (Tr. 9-11; G.E. 2.) Defendant was standing in the street at the passenger window of the van. (Tr. 11, 14.) The other vehicle, the Pontiac, had two occupants, and was parked adjacent to the van. (Tr. 10; G.E. 2.) When the officers' vehicle approached, the Pontiac moved forward and parked facing north, but on the wrong side of the roadway. (Tr. 10; G.E. 2 & G.E. 3.)

The officers did not immediately know what was occurring. (Tr. 10.) They stopped to investigate but did not activate lights or sirens on their patrol vehicle. (Tr. 16, 45). The officers exited their vehicle and approached on foot. (Tr. 16.) Officer Sundermeier approached Defendant at the van, while the other officer and the Deputy approached the Pontiac. (Tr. 16, 45.) Defendant was wearing jeans and a black, canvas, insulated jacket. (*See* G.E. 4.) The temperature was about 70 degrees outside

2

and the sky was cloudy. (*See* G.E. 1 and G.E. 4.) Earlier that day, the wind had been blowing at 23 miles per hour, with gusts of up to 32 miles per hour. (G.E. 1.)

As Officer Sundermeier approached Defendant, Defendant looked away and pressed the front of his body against the door of the van. (Tr. 17.) Defendant had a cell phone in his hand, but placed it on the passenger seat through the open window. (*Id.*) Officer Sundermeier asked Defendant why he was standing in the street. (Tr. at 18.) Defendant looked at Officer Sundermeier and replied that he was talking to his girlfriend. (Tr. at 18, 31.) Defendant then continued his conversation with the girl in the van. (*Id.*) Defendant turned his head partway when speaking with the officer, but kept his body pressed against the van. (*Id.*)

Officer Sundemeier testified that, based on the circumstances known to that point, he was concerned that Defendant was armed. (Tr. 20.) When asked, Defendant said he did not have a gun. (Tr. 20.) Officer Sundermeier then told Defendant that he was going to pat him down and he ordered Defendant to put his hands on the van. (Tr. at 20.) During the frisk, Officer Sundermeier felt a heavy object inside Defendant's lapel pocket and Defendnat said, "It's in my pocket." (Tr. at 21.) Officer Sundermeier found a gun in Defendant's pocket and placed him under arrest. (Tr. at 23.) After he was arrested, Defendant was taken to Central Police Headquarters where he was interrogated and made incriminating statements about the gun. (Tr. at 24.)

The Magistrate concluded that Officer Sundermeier's seizure and search were justified by reasonable suspicion. The Magistrate reasoned that Officer Sundermeier's suspicion was supported by Defendant's dress, i.e. wearing a winter coat during the summer; Defendant's posture in leaning against the van; Officer Sundermeier's

3

knowledge of prior incidents in the area that included three gun arrests; and Officer Sundermeier's knowledge that rival gang members were moving into the area. Defendant objects to the Magistrate's findings and conclusion that Defendant's later statements were not fruit of the poisonous tree.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendants have objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendation. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

**DISCUSSION**

The Defendant argues that Officer Sundermeier's detention and search was not supported by reasonable suspicion. The Fourth Amendment demands that people shall "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause. . . ." U.S. Const., amend. IV. Under the Fourth Amendment, warrantless searches are unreasonable, "subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson,* 508 U.S. 366, 372 (1993). An exception to the warrant requirement permits police officers to briefly detain suspicious individuals when law enforcement officers have reasonable suspicion that criminal activity is afoot. See *Terry v. Ohio*, 392 U.S. 1, 27 (1968). During such a detention, officers may conduct a pat-down search for weapons if the officers have reasonable suspicion that the person is armed. *See id.* The Court reviews whether Officer Sundermeier unreasonably

4

detained Defendant and whether Officer Sundermeier was justified in conducting a pat-down search.

I. **Reasonable Suspicion to Justify Stop at its Inception**

Defendant first argues that officers had no reasonable suspicion to justify a stop. "Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu,* 534 U.S. 266, 274 (2002) (citation omitted) (internal quotation marks omitted). "To be reasonable, suspicion must be based on 'specific and articulable facts' that are 'taken together with rational inferences from those facts'—that is, something more than an 'inchoate and unparticularized suspicion or 'hunch.'" *United States v. Stewart,* 631 F.3d 453, 457 (8th Cir. 2011) (quoting *Terry,* 392 U.S. at 21, 29). "The behavior on which reasonable suspicion is grounded . . . need not establish that the suspect is probably guilty of a crime or eliminate innocent interpretations of the circumstances." *Id.* (citing *United States v. Carpenter,* 462 F.3d 981, 986 (8th Cir. 2006)). "Thus, factors that individually may be consistent with innocent behavior, when taken together, can give rise to reasonable suspicion, even though some persons exhibiting those factors will be innocent." *Id.* (citing *Carpenter*, 462 F.3d at 986); *see also Arvizu,* 534 U.S. at 277.

Even if Defendant's interaction with Officer Sundermeier was non-consensual, there is evidence that Officer Sundermeier had reasonable suspicion to justify the stop. The officers saw the van stopped illegally in the street facing the wrong way, with Defendant at the passenger window. Based upon the officers' training and experience, this behavior was

5

consistent with drug trafficking activity. Further, Officer Sundermeier had cause to believe both the van driver and Defendant were in violation of Omaha City Ordinances and State law concerning, among things, parking illegally and walking in the street. *See* Omaha, Neb., Code, Sec. 36-107 (Walking on roadway); Sec. 36-108 (Soliciting rides or business); Sec. 36-112 (Crossing roadway at point other than crosswalk); Sec. 36-153 (Parallel parking); Neb. Rev. Stat. § 60-6,167(1) (Parallel parking); Neb. Rev. Stat. §§ 60-6,156(2) (Walking on shoulder); Neb. Rev. Stat. § 60-6,157(1) (Soliciting ride). Based upon the evidence, the officers were justified to investigate whether Defendant and individuals in the other vehicles had committed these violations.

Defendant argues that Officer Sundermeier's suspicion could not be based on traffic violations because there was no evidence that Defendant was walking, that a sidewalk was available, that a shoulder was available, that Defendant was asking the minivan for a ride, that Defendant was panhandling or looking for work, that Defendant was crossing the street, or that there were any operational traffic signals nearby – all of which are elements of these referenced offenses. *See, generally,* Omaha Mun. Code §§ 36-107, 36-108, and 36-112 and Neb. Rev. Stat. §§ 60-6,156(2) and 60-6,157(1). However, as stated above, Officer Sundermeier need not establish that the suspect is probably guilty of a crime or eliminate innocent interpretations of the circumstances. *Stewart,* 631 F.3d at 457. Officer Sundermeier was therefore legally justified to approach the van and briefly detain both Defendant and the van's driver to determine whether any of these crimes were committed.

In arguing further that the initial stop was not justified, Defendnat relies heavily on *United States v. Jones*, 606 F.3d 964, 966 (8th Cir. 2010). In *Jones*, an officer decided to stop a person who was walking on a mild September afternoon after observing that the

6

peson was wearing a long-sleeved hooded sweatshirt and "clutching the front area of his hoodie pocket with his right hand." *Id.* at 967. The government argued that the officer had reasonable suspicion to believe the defendant was holding a firearm against his body because clutching the outside of a hoodie pocket was one of the firearm-carrying clues the officer had been trained to observe. *Id.* However, the suspect did not exhibit any of the other clues which the officer had been trained to look for "such as walking with an unusual gait, turning that part of his body away from the officers' view, adjusting his grip or the location of the item in his pocket, or running away." *Id.* at 967. Under the totality of the circumstances, the Eighth Circuit found that investigatory stop violated the defendant's Fourth Amendment rights.

This case is distinguishable from *Jones*. In *Jones*, the Eighth Circuit found that it was "remarkable" that the government failed to identify what criminal activity the officer suspected when he initiated the stop. *Id.* at 966. In this case, there is evidence that the arrangement of the vehicles and individuals was consistent with drug activity. Further, there is evidence that officers suspected that Defendant and the drivers of the vehicles were committing several traffic violations. Thus, in contrast to the officers in *Jones*, the officers in this case identified specific, suspected criminal activity. Accordingly, the stop was justified at its inception.[1]

---

[1] The Magistrate appeared to rely on his finding that the exchange between Officer Sundermeier and Defendant was, at least at first, consensual. The Magistrate therefore did not make express findings as to whether the stop was initially justified. The Court notes that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). "So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." *Id.* (internal citation omitted) (quoting C*alifornia v. Hodari D.,* 499 U.S. 621, 628 (1991)). Defendant argues the Magistrate's conclusion was erroneous because Officer Sundermeier continued the exchange even when Defendant demonstrated that he did not want to speak with Officer Sundermeier. (Tr. 31.) However, this argument

## II.  Reasonable Suspicion Justifying Pat-Down Search

Defendant argues that the Magistrate erred in finding that Officer had reasonable suspicion to conduct a pat-down search of Defendant. To justify a pat-down search, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger." *Terry*, 392 U.S. at 27. Whether an officer has demonstrated reasonable suspicion "is assessed from the point of view of trained law enforcement officers based on the totality of the circumstances known to the officers at the relevant time." *United States v. Zamora–Lopez,* 685 F.3d 787, 790 (8th Cir. 2012); *see also United States v. Hollins,* 685 F.3d 703, 706 (8th Cir. 2012) ("'The determination of whether probable cause,' or reasonable suspicion, 'existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time.'") (quoting *United States v. Sanders,* 196 F.3d 910, 913 (8th Cir.1999)). "In considering the reasonableness of an officer's suspicion, 'we must determine whether the facts *collectively* provide a basis for reasonable suspicion, rather than determine whether each fact separately establishes such a basis.'" *Stewart*, 631 F.3d at 457 (quoting *United States v. Stachowiak,* 521 F.3d 852, 856 (8th Cir. 2008)). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions

---

potentially ignores "the fact that the Supreme Court in *Terry* upheld the constitutionality of a pat-down search *without considering* whether an investigative stop preceded the protective frisk." *United States v. Davis*, 202 F.3d 1060, 1062 (8th Cir. 2000) (emphasis in original) (citing *Terry*, 392 U.S. at 19 n.16). Thus, although the Court need not determine whether the encounter was consensual because there is evidence that the stop was justified at its inception, the Magistrate did not err in omitting specific findings justifying the initial stop because he considered whether there was reasonable suspicion to conduct a protective frisk.

about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* (quoting *Arvizu,* 534 U.S. at 273).

Based upon Officer Sundermeier's training, experience, and the totality of the circumstances known to him at the time, he was justified in conducting a pat-down search of Defendant. Officer Sundermeier knew that during the previous weeks, there had been three firearms recovered from the area of the apartment building in front of which Defendant was standing, there had been a shots fired call, and there were reports of one street gang claiming the area while members of a rival street gang recently were moving into the nearby apartment. Officer Sundermeier was also in close range with Defendant while investigating Defendant's presence in the street and testified that Defendant was wearing an insulated, hooded coat which was inconsistent with the weather conditions. (G.E. 1, 4-6.) After Defendant noticed the approaching officer, Defendant pressed the front of his body against the door of the van. Defendant initially had a cell phone in his hand, but placed it on the passenger seat through the open window. Defendant thereby freed up his hands, but kept his body pressed against the van while he responded to Officer Sundermeier's question about what Defendant was doing.

Based on the totality of the circumstances, and "viewing the facts from the vantage point of those versed in the field of law enforcement," *Davis*, 202 F.3d at 1063 (quotation and citations omitted), Officer Sundermeier reasonably believed that Defendant might be armed and presently dangerous and criminal activity might be afoot. Officer Sundermeier reasonably suspected criminal activity viewing Defendant's presence in the street and activity consistent with drug trafficking. Further, Officer Sundermeier reasonably suspected that, due to Defendant's actions, clothing, and the

facts known to Officer Sundermeier, that Defendant may have been armed. Accordingly, Officer Sundermeier was justified in conducting a pat-down search.

## CONCLUSION

For the reasons discussed, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

IT IS ORDERED:

1. The Findings and Recommendation (Filing No. 25) are adopted;

2. The Motion to Suppress filed by the Defendant Melvin M. Dortch (Filing No. 18) is denied; and

3. The Defendant's Objection to the Findings and Recommendation (Filing No. 29) is overruled.

Dated this 19th day of February, 2016

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge